NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260241-U

NOS. 4-26-0241, 4-26-0242 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Mar. B. and Mat. B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | Nos. 25JA23 |
| v. | ) | 25JA24 |
| Matthew B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Chad M. Long, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Grischow and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) the trial court's determination that respondent was dispositionally unfit was not against the manifest weight of the evidence, (2) respondent's challenge to the sex offender evaluation was moot, and (3) the court's order requiring him to engage in parenting classes was not an abuse of discretion.

¶ 2    In March 2025, the State filed separate amended petitions for the adjudication of wardship of respondent Matthew B.'s minor children: Mar. B. (born in November 2013) and Mat. B. (born in October 2011). In July 2025, the trial court adjudicated the minors neglected. In October 2025, the court found respondent unfit, made the minors wards of the court, and granted custody and guardianship of the minors to the Illinois Department of Children and Family Services (DCFS). (The minors' mother, Cassandra S., is not a party to this appeal.)

¶ 3    On appeal, respondent argues (1) the trial court's order finding him dispositionally

unfit was against the manifest weight of the evidence and (2) the order requiring him to complete a sex offender evaluation and parenting classes was not supported by the evidence. For the reasons that follow, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On March 4, 2025, a call was made to DCFS to report Cassandra for perpetrating a violent physical assault against Mat. B. During the attack, Cassandra took the minor into a car and hit her head on the gear shift, beat her with an extension cord, threw her on the ground, and punched her in the chest repeatedly, despite knowing she had a congenital heart disorder. Cassandra screamed and made vulgar sexual comments at the minor, blaming her for being the victim of sexual abuse perpetrated by Alvin R., Cassandra's paramour. Mar. B. was present for the entire attack and was extremely upset by what she witnessed. On March 6, 2025, both minors were taken into protective custody.

¶ 6        On March 10, 2025, the State filed separate amended petitions for adjudication of wardship, alleging Mar. B. and Mat. B. were neglected and abused minors pursuant to sections 2-3(1)(b) and 2-3(2)(i) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b), 2-3(2)(i) (West 2024)). The amended petitions alleged (1) Cassandra and Alvin physically abused the minors, (2) Alvin had sexually abused Mat. B. over several years, (3) the minors resided in a home with no running water, and (4) Cassandra and Alvin engaged in domestic violence in the presence of the minors. At a shelter care hearing held the same day, respondent agreed to granting temporary custody of the minors to DCFS. The trial court entered a temporary custody order, finding there was probable cause to believe the minors were neglected and an immediate and urgent necessity to remove the minors from their home. The court granted temporary custody of the minors to DCFS.

¶ 7 In July 2025, the trial court held an adjudicatory hearing. Based on Cassandra's stipulation and the State's factual basis, the court adjudicated the minors neglected.

¶ 8 In October 2025, the trial court held a dispositional hearing. The court admitted, without objection, the following evidence: (1) an Options Program intake assessment filed on August 19, 2025, (2) a dispositional hearing report filed on August 19, 2025, (3) a status alert filed on September 23, 2025, (4) a dispositional status update filed on October 20, 2025, (5) an integrated assessment filed on August 7, 2025, and (6) a family service plan filed on August 18, 2025.

¶ 9 Respondent was interviewed for the integrated assessment in June 2025. The assessment noted he "attempted to present himself in a more positive light which negatively impacted his authentic report of pertinent safety factors." In 2019, respondent was "Founded" for an allegation of sexual abuse against Mat. B. in the State of Iowa. He alleged that Cassandra forced Mat. B. to fabricate the allegations. Due to this incident, respondent has had no contact with the minors since 2018. Respondent's criminal history included five convictions, including one conviction in 1994 for criminal sexual abuse. He reported he was convicted when he was 18 years old and engaged in a dating relationship with a 16-year-old. Respondent, who is 49 years old, is currently married to Mekali D., who is 26 years old and Cassandra's niece. They have two children together.

¶ 10 The integrated assessment found respondent consistently blamed others, including former partners and his own children, for interpersonal conflict or harm. He demonstrated limited empathy, manipulative behavior, and a lack of accountability. He also struggled with anger management and emotional regulation. The assessment further noted his pattern of engaging in dating relationships with significantly younger and vulnerable individuals. Based on these

findings, the assessment concluded it was unclear if the minors could ever be safely placed with respondent, and the prognosis for reunification within the next 5 to 12 months was poor.

¶ 11     The integrated assessment recommended respondent submit to a sex offender assessment and comply with any recommended sex offender treatment, based on the founded allegation of sexual abuse of Mat. B. It was also recommended that respondent participate in a parenting education program to educate him on the impacts of trauma on adolescent development and to learn trauma-informed parenting skills.

¶ 12     The August 2025 dispositional hearing report stated respondent completed a mental health assessment and was recommended to engage in individual therapy and family counseling. He had also completed a substance abuse assessment and was recommended to engage in random drug tests. Respondent was scheduled to begin parenting classes soon. The report noted there were conflicting stories as to the 2018 founded allegation of sexual abuse, as Mat. B. had recently disclosed to her therapist that respondent had never abused her and Cassandra forced her to lie about the alleged abuse.

¶ 13     The September 2025 status alert indicated respondent completed a sex offender evaluation and included a copy of the evaluation results. The evaluation found respondent was at a "below average risk" for reoffending and recommended no further sex offender treatment and that he be allowed unsupervised contact with the minors.

¶ 14     The October 2025 dispositional status update noted respondent and Mekali agreed to engage in domestic violence classes. This was due to an incident where Mekali, who has been diagnosed with schizophrenia, stopped taking her medication and slapped and bit respondent during an argument.

¶ 15     Respondent called the caseworker, Cassie Ford, as his only witness. Ford testified

respondent, Mekali, and their two children were currently participating in intact services. She stated respondent completed a sex offender evaluation in September 2025. Based on the results, no further treatment was required. Respondent was signed up to begin parenting classes in January 2026. He submitted to drug testing, and most of his tests yielded positive results for tetrahydrocannabinol (THC). The agency was aware that respondent used THC to cope with post-traumatic stress disorder, which he was diagnosed with following a work accident where he suffered injuries and burns.

¶ 16    Ford testified Mat. B. was currently hospitalized. Once released from the hospital, the agency intended to move Mat. B. to a residential facility. Ford explained Mat. B. needed additional services that would not be available in a traditional home environment. Mar. B. was currently attending therapy and was "doing super well." Ford stated respondent would start attending sessions with Mar. B. by the end of the month and would transition to visitation soon thereafter.

¶ 17    On cross-examination, Ford testified the integrated assessment raised numerous concerns regarding respondent's ability to safely and effectively parent. Specifically, the integrated assessment found respondent had "a profound lack of insight and accountability and a refusal to acknowledge abusive behavior which severely undermine[d] trust and safety in the parent child relationship." Ford noted the minors had trust issues with respondent because he had not been involved in their lives since 2018. Ford testified parenting classes were necessary for respondent to determine his ability to parent the minors.

¶ 18    Respondent's counsel argued respondent should be found fit as to both minors. In the alternative, counsel argued, if the trial court was not prepared to return the minors to his care given their serious needs, the court should instead find him fit but unable. Counsel also objected

to requiring additional services, including the parenting capacity evaluation, arguing it was unnecessary for rebuilding the relationship between respondent and the minors and would not assist in reunification.

¶ 19        The trial court found respondent unfit as to both minors. The court expressed "great concern about the mental health and parenting capacities for both parents." The court characterized the stipulated-to allegations as "simply unbelievable" and "disturbing." As to respondent, the court noted he had not been involved in the minors' lives for almost a decade. The court further noted the integrated assessment identified numerous issues respondent needed to address before the court could consider returning the minors to his care. The court made the minors wards of the court and placed custody and guardianship of the minors with DCFS.

¶ 20        The trial court ordered visitation would continue at the discretion of DCFS. As to services, the court ordered respondent to cooperate with DCFS and comply with the service plan. The court noted respondent had already completed the sex offender assessment, and no additional treatment was required. The court ordered respondent to engage in parenting classes, substance abuse treatment, domestic violence services, and drug testing and maintain stable income and housing.

¶ 21        This appeal followed.

¶ 22                            II. ANALYSIS

¶ 23        On appeal, respondent challenges the trial court's dispositional order finding him dispositionally unfit and requiring him to complete a sex offender evaluation and parenting classes.

¶ 24                            A. Unfitness

¶ 25        The Juvenile Court Act establishes a two-stage process to determine whether a minor should be removed from the custody of her parents and made a ward of the court. *In re A.P.*,

2012 IL 113875, ¶ 18. The first stage is an adjudicatory hearing, where the trial court determines whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2024). If the court determines the minor is neglected or abused, it moves to the second stage, which is the dispositional hearing. 705 ILCS 405/2-21(2) (West 2024). At the dispositional hearing, the court determines whether it is in the best interest of the minor and the public that the minor be made a ward of the court. *A.P.*, 2012 IL 113875, ¶ 21. In addition, the court may place custody and guardianship of the minor with DCFS upon finding that (1) the minor's parents are unfit, unable, or unwilling to care for the minor and (2) "the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents." 705 ILCS 405/2-27(1)(d) (West 2024).

¶ 26        "We will not reverse a trial court's finding of unfitness, unless it is against the manifest weight of the evidence, because the trial court had a superior opportunity to view and evaluate the parties." *In re K.E.S.*, 2018 IL App (2d) 170907, ¶ 51. A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence presented. *In re D.F.*, 201 Ill. 2d 476, 498 (2002).

¶ 27        Respondent argues the trial court's dispositional unfitness finding was against the manifest weight of the evidence where he (1) voluntarily engaged in services, (2) completed a sex offender evaluation, which recommended he be allowed unsupervised contact with the minors, (3) was not the offending parent in the abuse of Mat. B. and Mar. B., and (4) demonstrated his ability to safely parent his other children.

¶ 28        Initially, respondent appears to concede that there was sufficient evidence to find him unable to care for the minors. We need not address this concession, as the trial court found

solely that he was unfit. A recent line of cases from this court has found where a parent concedes he is unable, yet the trial court finds him only to be unfit, he has not waived his challenge to the court's dispositional order. See *In re L.H.*, 2026 IL App (4th) 250997-U, ¶¶ 33-35. Accordingly, we confine our review to whether the trial court erred in finding respondent dispositionally unfit.

¶ 29 At the time of the dispositional hearing, respondent was cooperating with the agency, had completed many of the assessments, and had started some of the services. However, many of the issues identified in the integrated assessment, which directly affected his ability to safely parent the minors, still needed to be addressed, such as his limited empathy, manipulative behavior, and lack of accountability. Respondent had not yet started parenting classes, domestic violence services, individual therapy, family counseling, or visitation. In fact, respondent would not start family counseling sessions with Mar. B. until the end of the month, which needed to be successfully completed before visitation could begin. We cannot say the trial court's unfitness finding on this basis was unreasonable or not based on the evidence.

¶ 30 Next, respondent questions how he could be found unfit when the sex offender evaluation recommended he be allowed unsupervised contact with the minors. While the findings of the sex offender evaluation are relevant to his fitness, they are not dispositive. The results of the sex offender evaluation do not negate the other areas of concern that need to be addressed by respondent through his court-ordered services. Furthermore, the integrated assessment found other concerning issues relating to respondent's sexual behavior, including a 1994 criminal sexual abuse conviction and a history of dating much younger women, including his current wife, who is 23 years younger than him.

¶ 31 Respondent also claims he is not unfit because he was not the offending parent. However, he acknowledges he had no contact with the minors following the 2018 founded

allegation of sexual abuse. Respondent was entirely uninvolved in the lives of the minors during the time they experienced horrific physical and sexual abuse. Respondent attempts to excuse his absence by blaming Cassandra for allegedly coercing Mat. B. to fabricate the allegations against him. However, his decision to voluntarily abdicate his parental duties bears heavily on his fitness to care for the minors. The trial court properly considered this evidence and its conclusion was not against the manifest weight of the evidence.

¶ 32        Finally, respondent suggests, because he was found fit as to his other children in a separate proceeding, he "necessarily" must be found fit in this case. However, " '[c]ases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique circumstances.' " *A.P.*, 2012 IL 113875, ¶ 17 (quoting *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004)). Whether respondent is fit as to his other children has no bearing as to his fitness to parent Mar. B. and Mat. B. As discussed above, unlike his other children, Mar. B. and Mat. B. had no relationship with respondent for almost a decade, during which time they both suffered physical abuse and Mat. B. was a victim of sexual abuse. The unique challenges presented by Mar. B.'s and Mat. B.'s cases support the trial court's unfitness determination, regardless of respondent's fitness as to his other children.

¶ 33                        B. Court-Ordered Services

¶ 34        Next, respondent argues the trial court's order requiring him to complete a sex offender evaluation and parenting classes was not supported by the record. At the dispositional hearing, " '[t]he court *** shall consider the permanency goal set for the minor, the nature of the service plan for the minor[,] and the services delivered and to be delivered under the plan.' " *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008) (quoting 705 ILCS 405/2-22(1) (West 2006)). "Although the conditions of a dispositional order need not relate solely to the grounds for adjudication of

wardship, there must be some basis in the evidence for them, and the propriety of the conditions of the dispositional order are reviewed on an abuse of discretion standard." *In re Chyna B.*, 331 Ill. App. 3d 591, 597-98 (2002).

¶ 35 First, respondent's argument as to the sex offender evaluation is moot. "A case is moot when it does not involve any actual controversy [citation] and the decision of a reviewing court can have no practical effect on the parties." (Internal quotation marks omitted.) *In re Lakita B.*, 297 Ill. App. 3d 985, 992 (1998). At the time of the dispositional hearing, respondent had already completed a sex offender evaluation. Based on the results of the sex offender evaluation, the trial court did not order any further treatment. Accordingly, this issue is moot.

¶ 36 Second, the integrated assessment found respondent struggled with emotional issues that affected his ability to parent safely and effectively, including a denial of personal responsibility and limited empathy. Additionally, the minors, in particular Mat. B., had unique needs due to the severe trauma inflicted upon them prior to being taken into care. A parenting class would help respondent learn trauma-informed parenting skills necessary for addressing the minors' needs. As such, the trial court's order requiring respondent to engage in parenting classes was not an abuse of discretion.

¶ 37                                III. CONCLUSION

¶ 38 For the reasons stated, we affirm the trial court's judgment.

¶ 39 Affirmed.